# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Gilma Geanette Melgar and Aurelia Concepcion Martinez, | Civil No. 18-1956 (DWF/BRT) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| William P. Barr,[1] Kirstjen Nielsen, Lee Cissna, Donald Neufeld, Robert Cowan, Leslie Tritten, U.S. Citizenship and Immigration Services, and U.S. Department of Homeland Security, | |
| Defendants. | |

Brittany S. Bakken, Esq., and David L. Wilson, Esq., Wilson Law Group, counsel for Plaintiffs.

Anna Emily Juarez and Erin M. Secord, Assistant United States Attorneys, United States Attorney's Office, counsel for Defendants.

## INTRODUCTION

This case presents a question of statutory interpretation between the interplay of two provisions under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*: (1) the designation of Temporary Protected Status ("TPS") under § 1254a, and (2) the adjustment of status to Lawful Permanent Resident ("LPR") under § 1255(a). The

---

[1] The Court has substituted William P. Barr, Attorney General, for Jefferson B. Sessions, III. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(D).

Court now considers Plaintiffs Gilma Geanette Melgar and Aurelia Concepcion Martinez's (collectively, "Plaintiffs") First Motion for Summary Judgment (Doc. No. 23) and Defendants William P. Barr, III, Kirstjen Nielsen, Lee Cissna, Donald Neufeld, Robert Cowan, Leslie Tritten, U.S. Citizenship and Immigrant Services, and U.S. Department of Homeland Security's (collectively, "Defendants") Motion to Dismiss.[2] (Doc. No. 16.)

The sole issue before the Court is whether TPS beneficiaries are deemed "inspected and admitted" to satisfy the threshold requirement for adjustment of status to LPR. For the reasons discussed below, the Court holds that they are. Consequently, the Court grants Plaintiffs' First Motion for Summary Judgment and denies Defendants' Motion to Dismiss or, in the alternative, Cross-Motion for Summary Judgment. The Court remands the matter to United States Citizenship and Immigration Services ("USCIS") for adjudication consistent with this Memorandum Opinion.

## BACKGROUND

There is no dispute as to the facts asserted in Plaintiffs' Complaint. (Doc. No. 1.) Plaintiffs are each TPS beneficiaries whose applications for status adjustment to LPR were denied by USCIS. (Compl. ¶¶ 55, 69.) Plaintiff Gilma Geanette Melgar. ("Melgar") is a citizen of El Salvador who entered the United States unlawfully without inspection in February 1992. (*Id*. ¶¶ 1, 46.) Plaintiff Aurelia Concepcion Martinez

---

[2] Defendants filed a reply memorandum in support of their motion to dismiss, or alternatively, in support of cross-motion for summary judgment. (Doc. No. 31.) Because the parties appear to agree that no additional discovery is required, the Court will apply the legal standard for summary judgment.

2

("Martinez") is a citizen of Honduras who entered the United States unlawfully without inspection in November 1996. (*Id*. ¶¶ 4, 60.) The Attorney General designated both El Salvador (March 9, 2001) and Honduras (January 5, 1999) as TPS countries. (*Id*. ¶¶ 38, 41.) Following the corresponding designations, Plaintiffs each timely applied to USCIS for TPS. (*Id*. ¶¶ 48, 62.) Plaintiffs both disclosed to USCIS that they entered the United States without inspection. (Doc. Nos. 26 ¶ 3, 27 ¶ 2.) Plaintiffs were each approved for TPS and subsequent extensions by USCIS. (Compl. ¶¶ 49-50, 63-64.) In early 2018, the Secretary of the Department of Homeland Security, terminated TPS for El Salvador and Honduras effective September 9, 2019 and January 5, 2020, respectively. (*Id*. ¶¶ 39, 42.)

In December 2016, Melgar's adult daughter, who is a United States citizen, petitioned for an immigrant visa for Melgar as an immediate relative. (*Id*. ¶ 51.) Likewise, on August 27, 2017, Martinez's adult daughter, who is a United States citizen, petitioned for an immigrant visa for Martinez as an immediate relative. (*Id*. ¶ 65.) Plaintiffs also applied for family-based status adjustment to LPR in conjunction with their daughters' petitions. (*Id*. ¶¶ 51, 65.)

In response, USCIS issued a request for evidence of lawful admission or parole into the United States. (*Id.* ¶¶ 52, 66.) Plaintiffs each timely responded to the request with documentation of their TPS and a copy of *Bonilla v. Johnson*, 149 F. Supp. 3d 1135 (D. Minn. 2016), holding that TPS approval satisfied the admission requirement under INA § 245(a). (*Id*. ¶¶ 53, 67.) USCIS nonetheless denied Plaintiffs' applications for

adjustment of status, asserting that a grant of TPS is not an admission.[3] (*Id.* ¶¶ 55-56, 69-70.) Plaintiffs commenced this action for review of USCIS' denials under the Administrative Procedures Act.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate

---

[3] The denials included the following explanation: "Only where an applicant is already in lawful status at the moment they are granted TPS will their status be considered to be maintained for the purposes of adjustment pursuant to INA § 244(f)(4). This benefit does not apply
in your case because you were not in lawful status when your TPS was granted. . . . Section § 244(f)(4) neither addresses nor confers lawful admission to the United States. Lawful admission to the United States is a separate eligibility factor from maintenance of lawful status." (Compl. ¶¶ 56, 50.)

the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.     Scope of Review**

Plaintiffs' claims are brought under the judicial review provisions of the Administrative Procedures Act ("APA"). Under the APA, the reviewing court must affirm an agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing an agency action, the court applies a two-step analysis set forth in *Chevron*. *Chevron, U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also Ortega-Marroquin v. Holder*, 640 F.3d 814, 818 (8th Cir. 2011) (adopting *Chevron* analysis).

First, the court must determine "whether Congress has directly spoken to the precise question at issue," and "unambiguously expressed its intent." *Chevron*, 467 U.S. at 842-43. Courts use "traditional tools of statutory construction" to determine whether Congress has unambiguously expressed its intent. *Chevron*, 467 U.S. at 843 n.9. "[W]hen deciding whether the language is plain, [courts] must read the words 'in their context and with a view to their place in the overall statutory scheme.'" *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *F.D.A. v. Brown Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). If the meaning of the statute is unambiguous, then both the

5

court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43; *see* also *Friends of the Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1121 (8th Cir. 1999) ("When reviewing an agency's construction of a statute, the court first considers whether the intent of Congress is clear; if so, the court's inquiry is over[.]"). When "Congress has supplied a clear and unambiguous answer to the interpretive question at hand," the court need not defer to the agency's interpretations. *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018).

If, however, the court finds that the statute "is silent or ambiguous with respect to the specific issue," the court proceeds to step two of the analysis to determine "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Courts may defer to an agency interpretation even when the agency is not exercising its formal rule-making authority. *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944). The weight of deference, if so given, depends on "the thoroughness evident in [the agency's] consideration, the validity of reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control." *Id.* at 140.

### III. Analysis

The sole issue before the Court is one of statutory interpretation. The threshold question under *Chevron* is whether the plain language of 8 U.S.C. § 1254a(f)(4), read in context, makes clear that when a person is granted TPS under 8 U.S.C. § 1254a, it satisfies the threshold requirement of inspection and admission to the United States under 8 U.S.C. § 1255(a) for the purposes of becoming eligible for adjustment to LPR status.

6

Section 1254a(f)(4) states, "[d]uring a period in which an alien is granted temporary protected status under this section . . . for the purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4).

Section 1255(a) states, "[t]he status of an alien who was inspected and admitted or paroled into the Unites States" may be adjusted. 8 U.S.C. § 1255(a). Plaintiffs contend that the grant of TPS is an "admission" or "inspection" that satisfies the threshold requirement of § 1255(a). (Doc. No. 24 ("Plaintiffs' Memo.") at 3.)

Defendants argue that when § 1255 is read as a whole, it is clear that there are two independent requirements that must be satisfied for the purposes of adjustment: (1) admission, pursuant to § 1255(a); and (2) lawful status, pursuant to § 1255(c)(2).[4] (Doc. No. 18 ("Defs.' Memo.") at 13.) Accordingly, they suggest that the terms "admission" and "admitted" mean a lawful physical entry into the United States, whereas "status" describes the type of permission to be present in the United States.[5] (*Id.* at

---

[4] Section 1255(c)(2) states that subsection (a) is inapplicable to "an alien (other than an immediate relative [of a citizen of the United States]) . . . who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States. 8 U.S.C. § 1255(c)(2).

[5] Defendants cite the definitions of "admission" and "admitted" in the INA. *See* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien to the United States after inspection and authorization by an immigration officer.").

14- 15.) Defendants contend that while the TPS bestows "lawful status" to recipients, it does not provide "admission" as defined by the INA and as required for adjustment of status under § 1255(a). (*Id.* at 18-21.) Defendants argue that USCIS properly denied Plaintiffs' applications because they entered the United States illegally. (*Id.* at 18.)

Plaintiffs argue that the plain language of § 1254a(f)(4) clearly indicates that it applies to the entirety § 1255, and that Congress intended for individuals in Plaintiffs' position to be eligible to adjust status despite an unlawful entry. (Plaintiffs' Memo. at 33.) Specifically, Plaintiffs contend that exclusion of a reference to subsection 1255(c)(2) and inclusion of the word "nonimmigrant" in § 1254a(f)(4) clearly indicate that TPS beneficiaries are nonimmigrants who are deemed inspected and admitted or paroled for the purposes of adjustment under § 1255. (Doc. No. 32 ("Plaintiffs' Reply") at 2.) The Court agrees.

The Court interprets § 1254a(f)(4) exactly as written and finds that it clearly and unambiguously allows Plaintiffs to be considered as being in lawful status as nonimmigrants for purposes of adjustment of status under § 1255. Because the statute is clear and unambiguous, the Court need not consider the agency's interpretation under step two of the *Chevron* deference analysis.

Several other courts presented with this question have similarly concluded that a full and plain reading of the immigration laws requires courts to view a grant of TPS as satisfying inspection and admission. *See, e.g., Ramirez v. Brown*, 852 F.3d 954, 960 (9th Cir. 2017) ("Under the immigration laws, an alien who has obtained lawful status as a nonimmigrant has necessarily been "admitted."); *Flores v. U.S. Citizenship and*

8

*Immigration Servs.*, 718 F.3d 548, 553-54 (6th Cir. 2013) ("We interpret the statute exactly as written – as allowing [the applicant] to be considered as being in lawful status as a nonimmigrant for purposes of adjustment under § 1255."); *Leymis V. v. Whitaker*, 355 F. Supp. 3d 779, 787 (D. Minn. 2018.) ([Section] 1254a(f)(4) allows a TPS recipient to be considered as "inspected and admitted" under § 1255(a).); *Figueroa v. Rodriguez*, CV 16-8218 PA, 2017 WL 3575284, at *4 (C.D. Cal. Aug. 10, 2017); *Bonilla v. Johnson*, 149 F. Supp. 3d 1135, 1138-39 (D. Minn. 2016) ("Section 1254a(f)(4) applies to the entirety of § 1255, allows Plaintiff to be considered as being in lawful status as a nonimmigrant for purposes of adjustment under § 1255, and therefore satisfies the 'inspected and admitted or paroled' prerequisite of § 1255(a)."); *Medina v. Beers*, 65 F. Supp. 3d 419, 428-29 (E.D. Pa. 2014) ("By its clear terms, § 1254a(f)(4) applies to the entirety of § 1255 and thereby satisfies the 'inspected and admitted or paroled' prerequisite of § 1255(a).").

Defendants argue that the Court should ignore this persuasive weight of authority and adopt the Eleventh Circuit's more narrow interpretation.[6] *See Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260 (11th Cir. 2011). In *Serrano*, the Eleventh Circuit concluded that the plain language of § 1255(a) limits eligibility for status adjustment to an alien who has been inspected and admitted or paroled. *Id.* at 1265. The court observed, "an alien with

---

[6] Defendants contend that other courts have erred, in part, by relying on the TPS statute at 8 U.S.C. § 1254a(f)(4) instead of the controlling language in § 1255 which requires both an admission, § 1255(a), and lawful status, § 1255(c)(2). The Court finds that even if § 1255 controls, § 1254a(f)(4) satisfies the threshold requirements of both admission and lawful status. *See infra.* The Court disagrees that such a finding conflates the requirements.

9

Temporary Protected Status [who] has 'lawful status as a nonimmigrant' for purposes of adjusting his status does not change § 1255(a)'s threshold requirement that he is eligible for adjustment of status only if he was initially inspected and admitted or paroled." *Id.* While these Plaintiffs attempt to distinguish *Serrano* on the basis that the petitioner did not disclose his illegal entry into the country on his TPS application, the Ninth Circuit correctly observed that the factual difference "has no bearing on the Eleventh Circuit's conclusion that § 1254a(f)(4) does not override § 1255(a)'s threshold 'inspected and admitted' requirement." *Ramirez*, 852 F.3d at 959.

Nonetheless, the Ninth Circuit rejected *Serrano* because it found that "[section] 1254a(f)(4) unambiguously treats aliens with TPS as being 'admitted' for purposes of adjusting status." *Id.* at 958. The Court agrees. The Ninth Circuit relied on the admission process and procedures for nonimmigrants defined in 8 U.S.C. § 1184 and found that "by the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed 'admitted.'" *Id.* at 960. Because section 1254a(f)(4) confers the status of lawful nonimmigrant on TPS recipients, the Ninth Circuit found that TPS recipients were deemed admitted for the purposes of adjusting status. *Id.* at 958.[7] "This interpretation is further supported by the fact that the application and approval process for TPS shares many of the attributes as the inspection and admission process for nonimmigrants." *Leymis V.*, 355 F. Supp. 3d at 783. The Court finds that even if § 1255

---

[7] The courts in *Medina* and *Bonilla* rely on the same reference to "nonimmigrant" and reach the same conclusion. *See Medina*, 65 F. Supp. 3d at 430; *Bonilla*, 149 F. Supp. 3d at 1140.

sets forth two separate requirements, § 1254a(f)(4) satisfies each of them: (1) admission by virtue of conferring nonimmigrant status; and (2) lawful status by virtue of its plain language that "the alien shall be considered being in, and maintaining, lawful status."[8] 8 U.S.C. § 1254a(f)(4).

Defendants argue that being admitted as a nonimmigrant as described in 8 U.S.C. § 1184 is a distinct process from "the lawful entry of the alien into the United States after inspection and authorization by an immigrant officer" under § 11(a)(13)(A), and therefore fails to satisfy the threshold requirement of § 1255(a). (Defs.' Memo. at 23.) They argue further that TPS beneficiaries are not actually nonimmigrants, because § 1254a(f)(4) states only that TPS beneficiaries "shall be considered as being in, and maintaining, lawful status as a nonimmigrant." (*Id.* at 27.) They also contend that their interpretation is consistent with Congressional intent. (*Id.* at 35.) The Court disagrees.

Defendants' arguments fail to overcome this Court's reading of the clear and unambiguous language of the statutes in question. The Court finds the analysis in *Medina*, which addresses several of Defendants' arguments, particularly instructive. *Medina*, 65 F. Supp. 3d at 429-36 (addressing arguments that (1) Congress intended different meanings for the words "lawful status as nonimmigrant" from "inspected and admitted or paroled"; (2) if plaintiff's interpretation is correct, there would be no need for § 1255 to separately refer to admission or parole as a threshold requirement in

---

[8] The Court recognizes that the conferral of nonimmigrant status also satisfies the "lawful status" requirement; however, it makes the distinction to illustrate that its finding is not based on conflating "admission" with "lawful status."

11

subsection (a), and to refer to the failure to maintain lawful status as a bar to eligibility in subsection (c); (3) the plain language of § 1254a(f)(4) addresses only the bar to adjustment of status in § 1255(c)(2); (4) plaintiff's interpretation of the statutory language conflicts with portions of § 1255; (5) the Court should apply *Serrano*; and (6) the government's interpretation is consistent with Congressional intent). *See also* Bonilla, 149 F. Supp. 3d at 1142 (summarizing *Medina*'s analysis of the arguments raised by the government).

The Court is unconvinced by Defendants' attempt to parse words. *See Medina*, 65 F. Supp. 3d at 436 ("Defendants' repeated attempts to twist the basic language into either meaning something extremely specific or applying only to specific portions of § 1255 constitute tortured interpretations that do not comport with a plain language reading."). The plain language of § 1254a(f)(4) clearly states that it applies to all of § 1255: "[f]or the purposes of adjustment of status under section 1255," the TPS beneficiary "shall be considered being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). If Congress had intended that § 1254a(f)(4) was limited to only a part of § 1255, it could have easily specified.[9] Congress' choice to

---

[9] Defendants contend that if Congress had intended § 1254a(f)(4) to apply to § 1255(a), it could have stated that a TPS applicant is "admitted as a" nonimmigrant, or specified "section 1255(a)(1)," instead of stating than an alien shall be "considered as being in and maintaining lawful status as a nonimmigrant." (Doc. No. 31. ("Defs.' Reply") at 10.) The Court is unpersuaded. First, it is unnecessary to specify when the intent is to apply to the entire section. Here, Congress chose to state that the benefit applies to "section 1255," clearly indicating that it applies to the entire section. Second, use of the word "nonimmigrant" negates the need for any additional clarification that the

(Footnote Continued on Next Page)

include the word "nonimmigrant" is also significant. As discussed above, the Court holds that "a plain reading of "nonimmigrant" signifies inspection and admission since nonimmigrant status 'is a very specific type of status entailing admission by a customs officer under such designation.'" *Leymis V.*, 355 F. Supp. 3d at 784 (citing *Medina*, 65 F. Supp .3d at 431).

The Court is further unpersuaded that the term "admission" is limited to port of entry. This is not based on sympathy, but on a plain reading of the INA. Defendants acknowledge that the Eighth Circuit recognized two types of admission under the immigration laws: (1) port-of-entry inspection and (2) post-entry adjustment of status to LPR. *See Roberts v. Holder*, 745 F.3d 928, 932-33 (8th Cir. 2014). While Defendants contend that this decision was based on precedent subsequently overturned by the Board of Immigration Appeals, the Eighth Circuit also observed, "[t]he immigration statutes as a whole . . . do not treat the words 'admitted' and 'admission' consistently." *Id.* at 933. It then looked to § 1255 itself and found that § 1255(b) "treats *adjustment itself* as an 'admission.'" (*Id.*) While Defendants argue that *Roberts* does not expand the scope of "admission" to TPS, the Court disagrees. The Eighth Circuit concluded that "[t]he immigration laws may be fairly read as treating post-entry adjustment as a substitute for

---

(Footnote Continued From Previous Page)

beneficiary is deemed admitted for the purposes of section 1255. Whether or not there is a proposed bill to change the wording does not impact the clear and unambiguous language of the statute as it currently reads. *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 942 (2017) (finding that where "[t]he text is clear" courts "need not consider this extra-textual evidence").

port-of-entry inspection." *Id.* It is reasonable to conclude that "the immigration laws also allow for inspection and admission to occur subsequent to actual physical entry in the United Sates—like when TPS status [sic] is later granted to a beneficiary who entered unlawfully." *Leymis V.*, 355 F. Supp. 3d at 783.

Further, it simply defies logic that Congress would allow TPS beneficiaries to live and work in this country as a form of refuge, but deny them the ability to become lawful permanent resident without physically leaving this country. *See Bonilla*, 149 F. Supp. 3d at 1142-42 (quoting *Medina*, F. Supp. 3d at 435-36); *Flores*, 718 F.3d at 555-56. While Defendants argue that TPS beneficiaries need not return to their home countries to reenter legally, the Court is unpersuaded. The concept that physical entry is required, particularly in light of the rigorous application process necessary to gain TPS, is absurd. *See* 8 C.F.R. § 244.6; 8 U.S.C. §§ 1182(a), 1254a(c)(1)(A)(iii) (application requirements and grounds for inadmissibility). The Court finds that TPS is not, as Defendants contend, an avenue to "circumvent admission," but a practical, safe, alternative to obtain it. The plain, unambiguous language of § 1254a(f)(4) makes this clear.

## CONCLUSION

For the aforementioned reasons, the Court finds that the plain language of 8 U.S.C. § 1254a(f)(4), read in context, makes clear that when a person is granted TPS under 8 U.S.C. § 1254a, it satisfies the threshold requirement of inspection and admission to the United States under 8 U.S.C. § 1255(a) for the purposes of becoming eligible for adjustment to LPR status.

**ORDER**

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' First Motion for Summary Judgment (Doc. No. [23]) is **GRANTED**.

2. Defendants' Motion to Dismiss (Doc. No. [16]) is **DENIED**.

3. This matter is **REMANDED** to the United States Citizenship and Immigration Service for adjudication consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 2, 2019         s/Donovan W. Frank
                             DONOVAN W. FRANK
                             United States District Judge